**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

MICHELLE OBERSTAR, individually and on behalf of a class of all similarly situated persons,

Plaintiff,

v.

AMAZON.COM SERVICES, LLC DBA AMAZON FLEX,

Defendant.

Case No. 1:25-cv-03293-SKC-SBP
Courtroom C201

**DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION**

## TABLE OF CONTENTS


Page

I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

A. Amazon Flex and the Terms of Service .......... 2

B. This Litigation .......... 4

III. ARGUMENT .......... 4

A. Plaintiff agreed to arbitrate on an individual basis and agreed to delegate disputes over arbitrability to the arbitrator. .......... 4

B. The arbitration provision is enforceable under the FAA. .......... 6

C. Delaware law requires enforcing the arbitration agreement. .......... 14

IV. CONCLUSION .......... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Exp. Fin. Advisors, Inc. v. Topel*,
38 F. Supp. 2d 1233 (D. Colo. 1999) .... 18

*Attix v. Carrington Mortg. Servs., LLC*,
35 F.4th 1284 (11th Cir. 2022) .... 16

*Bean v. ES Partners, Inc.*,
533 F. Supp. 3d 1226 (S.D. Fla. 2021) .... 12

*Belnap v. Iasis Healthcare*,
844 F.3d 1272 (10th Cir. 2017) .... 5

*Bissonnette v. LePage Bakeries Park St., LLC*,
601 U.S. 246 (2024) .... 1, 14

*Bowers v. Tension Int'l, Inc.*,
No. 15-cv-2734, 2016 WL 3181312 (D. Colo. June 8, 2016) .... 19

*Brayman v. KeyPoint Gov't Sols., Inc.*,
83 F.4th 823 (10th Cir. 2023) .... 4, 5

*Brock v. Flowers Foods, Inc.*,
121 F.4th 753 (10th Cir. 2024), *aff'd*, 608 U.S. 380 (2026) .... 8, 9

*Brownlee v. Lithia Motors, Inc.*,
49 F. Supp. 3d 875 (D. Colo. 2014) .... 19

*Byerly v. Kirkpatrick Pettis Smith Polian, Inc.*,
996 P.2d 771 (Colo. App. 2000) .... 19

*Carder v. Carl M. Freeman Cmtys., LLC*,
Civ. No. 3319-VCP, 2009 WL 106510 (Del. Ch. Jan. 5, 2009) .... 6

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) .... 16

*Chappel v. Lab'y Corp. of Am.*,
232 F.3d 719 (9th Cir. 2000) .... 14

*Cross v. Amazon.com, Inc.*,
No. 23-cv-2099, 2024 WL 4346414 (D. Colo. Sept. 30, 2024) .................... 17, 18, 20

*Deboe-Clark v. U-Haul Int'l*,
No. 26-cv-2337, 2026 WL 2715856 (D. Kan. Sept. 15, 2026) ................................ 7

*Dish Network L.L.C. v. Ray*,
900 F.3d 1240 (10th Cir. 2018) ........................................................................ 5

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) ........................................................................................ 6

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ................................................................................. 4, 16

*Flowers Foods, Inc. v. Brock*,
608 U.S. 380 (2026) ............................................................... 1, 2, 4, 8, 9, 12

*Fomby v. CSC ServiceWorks, Inc.*,
No. 23-cv-5317, 2024 WL 3580824 (N.D. Cal. July 29, 2024) .............................. 13

*Fraga v. Premium Retail Servs., Inc.*,
61 F.4th 228 (1st Cir. 2023) .......................................................................... 11

*Graham v. State Farm Mut. Auto. Ins. Co.*,
565 A.2d 908 (Del. 1989) ............................................................................... 15

*Hansen v. GAB Bus. Servs., Inc.*,
876 P.2d 112 (Colo. App. 1994) ...................................................................... 18

*Harper v. Amazon.com Servs., Inc.*,
12 F.4th 287 (3d Cir. 2021) ........................................................................... 14

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ............................................................................. 5, 11, 12

*Immediato v. Postmates, Inc.*,
54 F.4th 67 (1st Cir. 2022) ..................................................................... 1, 9, 12

*Integrated Assocs. of Denver, Inc. v. Pope*,
No. 21-1019, 2022 WL 2388420 (10th Cir. July 1, 2022) ..................................... 19

*Joyner v. Frontier Airlines, Inc.*,
— F.4th —, 2026 WL 2576779 (10th Cir. 2026) ................................................ 7, 8

*Kipling v. State Farm Mut. Auto. Ins. Co.*,
159 F. Supp. 3d 1254 (D. Colo. 2016)........................................................................ 18

*Lambdin v. District Court*,
903 P.2d 1126 (Colo. 1995)............................................................... 17, 18, 19, 20

*Marquardt v. Perry*,
200 P.3d 1126 (Colo. App. 2008) .............................................................................. 5

*McBratnie v. Amazon.com, Inc.*,
No. 24-cv-12914, 2025 WL 2048328, at *6 (E.D. Mich. July 22, 2025)
(*McBratnie II* ) ................................................................................ 2, 14, 15, 16

*McBratnie v. Amazon.com, Inc.*,
No. 24-cv-12914, 2025 WL 2237367 (E.D. Mich. May 20, 2025)
(*McBratnie I* )........................................................................................... 2, 6, 15

*McCatty v. Stallion Express, LLC*,
789 F. Supp. 3d 107 (D. Mass. 2025) ....................................................................... 12

*Melikyan v. Amazon.com, Inc.*,
No. 21-cv-8715, 2023 WL 4505065 (C.D. Cal. July 5, 2023)....................... 2, 15, 16

*Nedlloyd Lines B.V. v. Superior Ct.*,
834 P.2d 1148 (Cal. 1992) ......................................................................................... 18

*Nieto v. Clark's Market, Inc.*,
488 P.3d 1140 (Colo. 2021)........................................................................................ 17

*O'Shea v. Maplebear Inc.*,
508 F. Supp. 3d 279 (N.D. Ill. 2020) ................................................................ 12, 14

*Pagano v. NordicTrack, Inc.*,
749 F. Supp. 3d 1183 (D. Utah 2024) ...................................................................... 17

*Ratajesak v. New Prime, Inc.*,
No. 18-cv-9396, 2019 WL 1771659 (C.D. Cal. Mar. 20, 2019) ............................. 18

*Rittmann v. Amazon.com, Inc.*,
971 F.3d 904 (9th Cir. 2020) ..................................................................................... 10

*SBC Interactive, Inc. v. Corp. Media Partners*,
714 A.2d 758 (Del. 1999) ........................................................................................... 15

*SEC v. Jarkesy*,
603 U.S. 109 (2024) .......... 20

*Shelton v. Delivery Drivers, Inc.*,
No. 22-cv-2135, 2023 WL 2629027 (C.D. Cal. Jan. 31, 2023) .......... 12

*Sherwood v. Marquette Transp. Co., LLC*,
587 F.3d 841 (7th Cir. 2009) .......... 14

*Shilling v. Shilling*,
332 A.3d 453 (Del. 2024) .......... 5

*Shugars v. Walmart Inc.*,
No. 24-cv-2765, 2025 WL 786348 (N.D. Cal. Mar. 12, 2025) .......... 12, 13

*Southwest Airlines Co. v. Saxon*,
596 U.S. 450 (2022) .......... 7, 12

*Vallagio at Inverness Residential Condo. Ass'n, Inc. v. Metro. Homes, Inc.*,
395 P.3d 788 (Colo. 2017) .......... 19

*Waithaka v. Amazon.com, Inc.*,
966 F.3d 10 (1st Cir. 2020) .......... 10

*Walker v. Amazon Logistics, Inc.*,
809 F. Supp. 3d 749 (N.D. Ohio 2025) .......... 2, 6, 14, 15, 16

*Wallace v. Grubhub Holdings, Inc.*,
970 F.3d 798 (7th Cir. 2020) (Barrett, J.) .......... 8

*Walz v. Walmart Inc.*,
No. 23-cv-6083, 2024 WL 2864230 (W.D. Wash. June 6, 2024) .......... 12, 13

*Young v. Shipt, Inc.*,
563 F. Supp. 3d 832 (N.D. Ill. 2021) .......... 12

**Statutes**

C.R.S. § 8-4-110(2) .......... 19, 20

C.R.S. § 8-4-121 .......... 17, 19

9 U.S.C. § 1 .......... 1, 7, 12

9 U.S.C. § 2 ........ 7

9 U.S.C. § 3 ........ 6

9 U.S.C. § 4 ........ 6

Colorado Uniform Arbitration Act ........ 17

Colorado Wage Claim Act ........ 2, 4, 16, 17, 18, 19, 20

Del. Code tit. 10, § 5701 ........ 15

Dodd-Frank Act ........ 16

Federal Arbitration Act ........ passim

Wage Claim Act ........ 17

# I. INTRODUCTION

Plaintiff Michelle Oberstar agreed to arbitrate any disputes related to her participation in the Amazon Flex program. The Court should hold Plaintiff to her agreement, compel arbitration, and stay the litigation under Federal or state law.

Plaintiff has argued that her agreement is exempt from the Federal Arbitration Act ("FAA"), on the theory that it is a "contract[] of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Plaintiff's argument fails for two reasons. Her agreement is not exempt from the FAA, and it is enforceable under state arbitration law in all events.

First, Plaintiff's agreement is not exempt from the FAA. The Supreme Court's latest guidance recognizes that within-state transportation can qualify as interstate commerce under FAA Section 1 if it fulfills part of a continuous cross-state journey to a final destination as part of a multistate transaction. *See Flowers Foods, Inc. v. Brock*, 608 U.S. 380, 386-89 (2026). But the Supreme Court declined to call into question the growing consensus that fulfilling in-state orders of locally stocked goods already within the customer's own state does not trigger Section 1. *See id.* at 389 (citing *Immediato v. Postmates, Inc.*, 54 F.4th 67, 72, 78 (1st Cir. 2022)). And the Court has instructed that the FAA exemption must be kept within an appropriately "narrow" scope, which does not extend to all workers who handle goods that move in interstate commerce. *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 256 (2024). Here, the evidence shows that Amazon Flex Delivery Partners in Colorado

overwhelmingly perform deliveries of goods that were already within Colorado at the time the Colorado customer purchased them—such as at a store or at a specialized warehouse designed to enable same-day delivery of items in the warehouse's retail inventory. After *Flowers Foods* just as before, deliveries of locally stocked same-day and retail-store items do not trigger the FAA exemption.

Second, Plaintiff's agreement is enforceable under state law regardless of whether it is exempt from the FAA. The agreement states that if a court finds the FAA inapplicable, Delaware law applies. Every court to decide the issue has enforced the agreement's selection of Delaware law. *See Walker v. Amazon Logistics, Inc.*, 809 F. Supp. 3d 749, 759-60 (N.D. Ohio 2025); *McBratnie v. Amazon.com, Inc.*, No. 24-cv-12914, 2025 WL 2237367, at *5 (E.D. Mich. May 20, 2025) (*McBratnie I*), *R&R adopted*, 2025 WL 2048328, at *6 (E.D. Mich. July 22, 2025) (*McBratnie II*); *Melikyan v. Amazon.com, Inc.*, No. 21-cv-8715, 2023 WL 4505065, at *3 (C.D. Cal. July 5, 2023). Plaintiff argues that the Colorado Wage Claim Act ("CWCA") renders her claim under that statute non-arbitrable. But that is a classic arbitrability dispute that, under the terms of her agreement, is reserved for the arbitrator. And in any event, Plaintiff's argument fails for multiple reasons even on its own terms.

## II. FACTUAL BACKGROUND

### A. Amazon Flex and the Terms of Service

Amazon affiliates sell products through various channels, including the Amazon.com website, mobile applications, and retail locations including Whole Foods

Market. *See* Exhibit 1, Declaration of Nick Jones ("Jones Decl."), ¶¶ 4-5. Through a smartphone application-based program called Amazon Flex, independent-contractor "Delivery Partners" can perform delivery blocks, using personal vehicles to make deliveries of groceries, food, or other goods to customers within their local area. *Id.* ¶¶ 3, 6, 11-21. To sign up, prospective Delivery Partners must download the Amazon Flex app on a phone, create an account, select a local area in which to make deliveries, and accept the Amazon Flex Independent Contractor Terms of Service ("TOS"). *Id.* ¶ 24.

Plaintiff followed that process when she signed up to become eligible for Amazon Flex. Amazon's records show that on May 30, 2023, she clicked a button signifying that she accepted the then-applicable version of the TOS. *Id.* ¶¶ 25-28. She also clicked a second button specifically agreeing to arbitration. *Id.* ¶¶ 27, 29.

The TOS contains a mutual agreement to arbitrate "any dispute or claim, whether based on contract, common law, or statute, arising out of or relating in any way to this Agreement . . . , to your participation in the Program, or to your performance of Services." TOS § 11(a) (some capitalization omitted). Arbitration is on an individual basis only. TOS § 11(b)-(g). The TOS generally chooses Delaware law to govern its provisions, but specifies that Section 11 is "governed by the Federal Arbitration Act and applicable federal law." TOS § 12. And "[i]f, for any reason, the Federal Arbitration Act is held by a court of competent jurisdiction not to apply to Section 11 . . . , the law of the state of Delaware . . . will govern Section 11." TOS § 12.

### B. This Litigation

Plaintiff filed this lawsuit in the District Court in Arapahoe County, Colorado, on September 15, 2025. *See* Dkt. 5 ("Complaint"). She alleges she was a "delivery driver[]" in Colorado through Amazon Flex between June 2023 and November 2024. Compl. ¶¶ 2, 6-7, 12. She claims Amazon misclassified Delivery Partners in Colorado as independent contractors rather than employees. Compl. ¶ 11. And she asserts that Amazon owes her and a putative statewide class unpaid wages, penalties, interest, and attorney's fees under the CWCA, C.R.S. § 8-4-101, *et seq*. Compl. ¶¶ 1, 14-30, 38. Amazon removed the action and moved to compel arbitration. ECF No. 21.

After briefing, the Supreme Court decided *Flowers Foods*, which addressed the scope of the FAA exemption in the context of workers "who transport[] goods on an intrastate leg of an interstate journey." 608 U.S. at 385. Magistrate Judge Prose determined that briefing on the effect of *Flowers Foods* would be helpful and denied Amazon's original arbitration motion without prejudice to refiling. ECF No. 27, at 2.

## III. <u>ARGUMENT</u>

### A. Plaintiff agreed to arbitrate on an individual basis and agreed to delegate disputes over arbitrability to the arbitrator.

The first task for the Court is to determine whether Plaintiff agreed to arbitrate—under "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also, e.g.*, *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 832 (10th Cir. 2023). Here, the requirements to form a contract are similar under any potentially applicable body of law,

including Delaware (specified by the TOS and Amazon's state of incorporation) and Colorado (where Plaintiff resides and performed services). Compl. ¶¶ 2-3; Jones Decl. ¶ 30; Dkt. 1-7, ¶¶ 2-3. Each state requires offer and acceptance (*i.e.*, assent) and consideration. *E.g.*, *Shilling v. Shilling*, 332 A.3d 453, 462 (Del. 2024); *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008). Plaintiff accepted the TOS on May 30, 2023, in exchange for becoming eligible to perform services through the program. Jones Decl. ¶¶ 25-29.

The next question is often whether the parties' "agreement covers a particular controversy." *Brayman*, 83 F.4th at 832 (citation omitted). But before addressing this arbitrability question, courts decide whether the parties delegated arbitrability to the arbitrator: "the question of *who* should decide arbitrability precedes the question of *whether* a dispute is arbitrable." *Id.* at 833 (quoting *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017)). If the agreement delegates arbitrability to the arbitrator, "a court possesses no power to decide the arbitrability issue[,] . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019)). Here, the TOS delegates arbitrability in two ways:

*First*, Section 11(i) provides for arbitration under the AAA Commercial Arbitration Rules. When "parties incorporate the AAA rules into a broad arbitration agreement" they "clearly and unmistakably evince[] their intent to arbitrate arbitrability." *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1246 (10th Cir. 2018); *see also*

*Carder v. Carl M. Freeman Cmtys., LLC*, Civ. No. 3319-VCP, 2009 WL 106510, at *6 (Del. Ch. Jan. 5, 2009) (same under Delaware law); *McBratnie I*, 2025 WL 2237367, at *7; *see* AAA, *Commercial Arbitration Rules and Mediation Procedures* R-7(a) (Sept. 1, 2022) (empowering arbitrator to rule on own jurisdiction), https://www.adr.org/media/ueonklrv/2026_commercial-arbitration-rules-mediation-procedures.pdf.

*Second*, the arbitrator must resolve any disputes over the "arbitrability of claims" under Section 11(a). TOS § 11(j); *see, e.g.*, *Walker*, 809 F. Supp. 3d at 755 (recognizing that through Section 11(j), "the issue of arbitrability of 'any dispute or claim, whether based on contract, common law, or statute, arising out of or relating in any way to this agreement . . . ,' is specifically delegated to the arbitrator"); *McBratnie I*, 2025 WL 2237367, at *7 (same). The only disputes for the Court are the validity or enforceability of the entire TOS, the applicability of the FAA exemption, and the validity, enforceability, or interpretation of TOS Sections 11(b) through (i), which are class-action and representative-action waivers. TOS § 11(j). Disputes over whether Plaintiff's claims are arbitrable otherwise are solely for the arbitrator.

### B. The arbitration provision is enforceable under the FAA.

The FAA's strong pro-arbitration policy requires courts to rigorously enforce arbitration agreements, including by compelling arbitration and staying litigation. 9 U.S.C. §§ 3-4; *see Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018). Here, the parties selected the FAA to govern their arbitration agreements. *See* TOS § 12. And,

besides, the FAA's basic coverage extends to "contract[s] evidencing a transaction involving commerce." 9 U.S.C. § 2. The TOS easily triggers the FAA's basic coverage.

Plaintiff has argued, however, that the TOS falls within the FAA's carveout for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. "Plaintiff, as the party opposing arbitration, bears the burden of demonstrating she falls within an exemption under the FAA." *Deboe-Clark v. U-Haul Int'l*, No. 26-cv-2337, 2026 WL 2715856, at *6 (D. Kan. Sept. 15, 2026). She cannot carry that burden.

In *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022), the Supreme Court adopted a two-step framework to determine whether an arbitration agreement falls within the Section 1 exemption. *See, e.g.*, *Joyner v. Frontier Airlines, Inc.*, — F.4th —, 2026 WL 2576779, at *2 (10th Cir. 2026). First, the Court must "defin[e] the relevant 'class of workers' to which the individual belongs." *Id.* (citation omitted). Second, it must "determine whether that class of workers is 'engaged in foreign or interstate commerce.'" *Id.* (citation omitted).

In this case, the parties' main disagreement is at step one. In the first round of arbitration briefing, Plaintiff characterized the relevant class of workers as "last-mile delivery drivers." ECF No. 2. That characterization is incorrect. The Tenth Circuit's recent *Joyner* decision explains how to define the relevant class of workers at *Saxon* step one. "[T]he relevant metric is the 'actual work that the members of the class, as a whole, typically carry out.'" 2026 WL 2576779, at *2 (quoting *Saxon*, 596 U.S. at

456). Thus, the fact "[t]hat an employee works for a transportation company does not necessarily mean the employee is a transportation worker." *Id.* To establish that she belongs to a class of last-mile delivery drivers, Plaintiff must show that such work is "typical[]" of the class "as a whole." And "someone whose occupation is not defined by its engagement in interstate commerce does not qualify for the exemption just because she occasionally performs that kind of work." *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 800 (7th Cir. 2020) (Barrett, J.).

Plaintiff cannot show that Delivery Partners like her typically perform last-mile deliveries or that such deliveries define what it means to be a Delivery Partner in Colorado. As the Tenth Circuit has defined the term, "last-mile delivery drivers" are "drivers who make the last intrastate leg of an interstate delivery route." *Brock v. Flowers Foods, Inc.*, 121 F.4th 753, 762 (10th Cir. 2024), *aff'd*, 608 U.S. 380 (2026). In *Brock*, the delivery driver "place[d] orders with out-of-state bakeries to commence the interstate delivery of products," "pick[ed] up the products within a day of the warehouse delivery, sign[ed] off on the products, load[ed] the products onto his vehicle, and deliver[ed] the products through the final intrastate leg of the trip" to the goods' "true customers," the retail stores through which the manufacturer sold the baked goods. *Id.* at 769. In those circumstances, the "intrastate delivery route form[ed] the last leg of the products' continuous interstate route," and the last-mile delivery driver was "an integral part of a single, unbroken stream of interstate commerce." *Id.* at 768 (citation omitted). Such last-mile deliveries contrast with

delivering food and goods from local pickup points (like restaurants or stores) to "intrastate customers" in a new "local transaction." *Id.* at 769.

In affirming the Tenth Circuit, the Supreme Court crystallized this distinction further. It noted that when the FAA was enacted, "[a] shipment from one state to another under a contract for continuous carriage" was interstate commerce. *Flowers Foods*, 608 U.S. at 386 (citation omitted). The Court thus illustrated the difference between interstate and intrastate transportation by reference to the *contract* or *transaction* between the buyer and seller: If "Customer A in State A enters a contract to purchase a truckload of [products] from Company B in State B," the transportation from State B to State A is interstate commerce whether the company uses one driver for the full journey or splits the journey between three drivers. *Id.* Either way, the "drivers played a direct, active, and necessary part in ensuring the [products] got from a point in State B . . . to a point in State A . . . as the contract required." *Id.* at 387. What matters, then, is "the character of the transaction." *Id.* (quoting *The Daniel Ball*, 77 U.S. 557, 565 (1870)). The Court even noted that it was not unsettling the line of circuit precedent "holding that intrastate couriers fulfilling take-out orders made within the State are not engaged in interstate commerce." *Id.* at 389 (citing *Immediato*, 54 F.4th at 72, 78).

Plaintiff cannot show that her class of workers is a class of last-mile delivery drivers who typically perform an intrastate leg of a continuous multistate journey pursuant to an interstate transaction as *Flowers Foods* describes. The evidence here

shows that unlike the last-mile delivery drivers described in older cases addressing how Amazon Flex operated in certain areas years ago, *see Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020); *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 13 (1st Cir. 2020), Amazon Flex deliveries in Colorado here overwhelmingly involve goods already stocked in Colorado inventories awaiting purchase by Colorado customers.

As Amazon's evidence describes, there are multiple different categories of Amazon Flex delivery blocks for which Delivery Partners can sign up. *See* Jones Decl. ¶¶ 12-20. For example, "GSF" delivery blocks have historically involved groceries delivered from Amazon Fresh or Whole Foods Market, or other fast-turnaround types of deliveries. Similarly, "ROAR" delivery blocks involved retail goods delivered from stores like OfficeMax. And "SSD" delivery blocks involve items at nearby, in-state facilities that can quickly be delivered to Colorado customers the very day they order them. *Id.* ¶¶ 14-15. The goods in those three categories are stocked locally, within the state. Separately, Amazon Flex also offers "AMZL" delivery blocks of items stocked in the company's broader network of fulfillment center warehouses. *Id.* ¶ 17. The goods in those AMZL blocks likewise are often stocked in a fulfillment center within the same state as the customer. *Id.* But in a subset of AMZL delivery blocks, the goods are located in a different state at the time of purchase. *Id.* Only that subset of AMZL delivery blocks might resemble the Supreme Court's hypotheticals of contracts for the purchase and delivery of goods to State B from State A. For GSF, ROAR, and SSD delivery blocks, on the other hand, customers in State A purchase items in State A

and receive delivery the same day. *See, e.g.*, *Fraga v. Premium Retail Servs., Inc.*, 61 F.4th 228, 241 (1st Cir. 2023) (describing how under First Circuit precedent, the FAA exemption applies when "a book . . . leaves an Amazon warehouse in New York headed for a particular purchaser in Massachusetts via a local Massachusetts driver who will see to it that the book completes the last mile of its interstate journey"); *Archer*, 190 N.E.3d at 1032 ("[I]n the 'last-mile driver' cases, from the moment the goods entered 'the flow of interstate commerce,' the goods were always 'destined for' the customers to whom the last-mile drivers made deliveries.").

The GSF, ROAR, and SSD categories make up the overwhelming majority of Amazon Flex delivery blocks in Colorado. For example, in 2022, 35.8% of Colorado Delivery Partners' delivery blocks were GSF, 0.1% were ROAR, and 51.3% were SSD—together making up 87.2%—compared to just 12.8% AMZL. *See* Exhibit 2, Declaration of Peter Nickerson ("Nickerson Decl."), ¶ 5. In 2023, the percentages were 23.0% GSF, 1.2% ROAR, and 57.0% SSD—81.2% in total—compared to just 18.8% AMZL. *Id.* ¶ 6. And in 2024, the percentages were 17.0% GSF, 1.5% ROAR, and 51.1% SSD—69.6% in total—compared to 30.4% AMZL. *Id.* ¶ 7. Thus, while Colorado Delivery Partners occasionally perform AMZL delivery blocks that sometimes, but not always, include items stocked in an Amazon fulfillment center in another state at the time of purchase, such work is not typical. Rather, the typical work of this class as a whole—constituting between 69.6% and 87.2% of the work year to year—is delivering

locally stocked items available for same-day delivery. Plaintiff belongs to a class of same-day delivery drivers, not last-mile delivery drivers.

With the class of workers correctly defined, *Saxon* step two is easy: same-day delivery work of locally stocked retail inventory and groceries is not "interstate commerce" within the sense of 9 U.S.C. § 1. *See, e.g.*, *Immediato*, 54 F.4th at 72, 78 (grocery/restaurant/convenience store deliveries); *Archer*, 190 N.E.3d at 1027 (restaurant/convenience-store deliveries of food and prepackaged goods); *Shugars v. Walmart Inc.*, No. 24-cv-2765, 2025 WL 786348, at *3-5 (N.D. Cal. Mar. 12, 2025) (same-day or next-day deliveries of goods in a local Walmart store's inventory); *Walz v. Walmart Inc.*, No. 23-cv-6083, 2024 WL 2864230, at *4-6 (W.D. Wash. June 6, 2024) (same); *Shelton v. Delivery Drivers, Inc.*, No. 22-cv-2135, 2023 WL 2629027, at *3 (C.D. Cal. Jan. 31, 2023) (same); *Young v. Shipt, Inc.*, 563 F. Supp. 3d 832, 839 (N.D. Ill. 2021) (grocery/same-day deliveries); *Bean v. ES Partners, Inc.*, 533 F. Supp. 3d 1226, 1236 (S.D. Fla. 2021) (same-day deliveries); *O'Shea v. Maplebear Inc.*, 508 F. Supp. 3d 279, 285-86 (N.D. Ill. 2020) (grocery deliveries).

In short, there is no contract for continuous carriage between states under FAA Section 1 and *Flowers Foods* when local drivers transport locally stocked goods "form[ing] part of a general inventory from which subsequent intrastate orders were filled." *McCatty v. Stallion Express, LLC*, 789 F. Supp. 3d 107, 118 (D. Mass. 2025) (distinguishing deliveries of *ad hoc* orders fulfilled from in-state inventory from "last-mile" deliveries, for which the customer's identity is already known when the goods

begin their interstate journey). In such circumstances, the local drivers facilitate "purely local transactions that occur only after the goods have concluded their journey" across state lines. *Shugars*, 2025 WL 786348, at *5; *see also Walz*, 2024 WL 2864230, at *6 (stating that Walmart Spark drivers "are not completing the last leg of a single, unbroken trip and transaction" but are "transport[ing] local merchandise to local customers"); *Fomby v. CSC ServiceWorks, Inc.*, No. 23-cv-5317, 2024 WL 3580824, at *7 (N.D. Cal. July 29, 2024) (holding that delivering laundry equipment stored at the defendant's in-state warehouses does not trigger the FAA exemption because these "transactions take place only within the state" and there is no "single, unbroken stream of interstate commerce" (citation omitted)).

Under the FAA, there is no substantive distinction between same-day deliveries of goods awaiting purchase on the shelves of an Amazon SSD facility and a Walmart Spark Driver's deliveries of the same goods awaiting purchase on the shelves of a Walmart store. *See, e.g.*, *Walz*, 2024 WL 2864230, at *1 ("Each product that a customer purchases through Spark Driver is 'taken off the shelf in that store and bagged for delivery' by Walmart employees before being delivered."). Both types of deliveries facilitate local, same-day retail transactions.[1] Nor is there a substantive distinction under the FAA between a Delivery Partner who delivers groceries from

[1] Indeed, Walmart characterizes its stores as "shoppable fulfillment center[s]" that enable the company to "send [purchased] items the shortest distance in the fastest time." *See* Melissa Repko, *Walmart Is Using Its Thousands of Stores to Battle Amazon for E-Commerce Market Share*, CNBC (June 2, 2022) (quoting the chief e-commerce officer for Walmart U.S.), https://www.cnbc.com/2022/06/02/walmart-bets-its-stores-will-give-it-an-edge-in-amazon-e-commerce-duel.html.

Whole Foods and an Instacart Shopper who delivers groceries from another grocery store. *See O'Shea*, 508 F. Supp. 3d at 282-83. The transportation work is the same in all these examples: delivery drivers go to the local facility, pick up items that were purchased from a retailer's in-state inventory, load the items into their car, and take the items to their purchasers. Such local deliveries do not trigger the FAA exemption. Otherwise, if the exemption reached every worker who handles such goods just because they previously "move[d] in interstate commerce," "the class of exempt workers" would be "limitless" when it must be kept "narrow." *Bissonnette*, 601 U.S. at 256.

### C. Delaware law requires enforcing the arbitration agreement.

Even if the TOS were exempt from the FAA, the outcome would not change. Plaintiff still must arbitrate. Arbitration agreements are enforceable under state law even if they are (or may be) exempt from the FAA. *See, e.g.*, *Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 294-96 (3d Cir. 2021); *Sherwood v. Marquette Transp. Co., LLC*, 587 F.3d 841, 843 (7th Cir. 2009); *Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 725 (9th Cir. 2000). Here, the TOS validly provides for enforcement under Delaware law, "[i]f, for any reason, the [FAA] is held by a court of competent jurisdiction not to apply." TOS § 12. The Court should therefore compel arbitration under Delaware law, like every court to decide the issue. *See Walker*, 809 F. Supp. 3d at 760 ("[E]ven assuming the [FAA] does not apply, Delaware law governs and Amazon's motion to compel is granted."); *McBratnie II*, 2025 WL 2048328, at *6 ("Irrespective of whether McBratnie could be compelled to arbitrate under the FAA, . . . she may be compelled

to arbitrate under Delaware law."); *McBratnie I*, 2025 WL 2237367, at *5 ("[E]ven if the exemption applied to McBratnie as an Amazon Delivery Partner and she could not be compelled to arbitrate *under the FAA*, she would still be subject to arbitration *under [Delaware] law*."); *Melikyan*, 2023 WL 4505065, at *3 ("[T]he court need not determine whether plaintiff is exempt from the FAA . . . because [Delaware] law is also applicable to the [Amazon Flex TOS].").

Like federal law, "[t]he public policy of [Delaware] favors the resolution of disputes through arbitration." *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 911 (Del. 1989) (citation omitted). Delaware thus "enacted a Uniform Arbitration Act," which is "similar to the [FAA]." *Id.* (citing Del. Code tit. 10, §§ 5701-5725). Like the FAA, Delaware's statute says that "[a] written agreement to submit to arbitration any controversy existing at or arising after the effective date of the agreement is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." Del. Code tit. 10, § 5701. And "[a]ny doubt as to arbitrability is to be resolved in favor of arbitration." *SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1999). Delaware's statute, however, has no exemption for transportation workers. So courts routinely enforce arbitration provisions that may be exempt from the FAA when the contract specifies Delaware state law as a fallback to the FAA.

The *Walker* case from the Northern District of Ohio, *McBratnie* case from the Eastern District of Michigan, and *Melikyan* case from the Central District of

California are directly on point. In those cases, just as here, an Amazon Flex Delivery Partner sued Amazon despite the TOS's arbitration provision. *See Walker*, 809 F. Supp. 3d at 754; *McBratnie II*, 2025 WL 2048328, at *1; *Melikyan*, 2023 WL 4505065, at *1. The courts held that given the TOS's choice-of-law provision, it is proper to compel arbitration and stay litigation under Delaware state law, regardless of whether the TOS is exempt from the FAA. *Walker*, 809 F. Supp. 3d at 754; *McBratnie II*, 2025 WL 2048328, at *6, *8; *Melikyan*, 2023 WL 4505065, at *1, *3. The Court thus has a straightforward path to compel arbitration without addressing whether the agreement is exempt from the FAA.

Plaintiff's only rejoinder has been an argument that by statute, her CWCA claim is not arbitrable. *See* ECF No. 27, at 1-2. That argument fails for five reasons.

*First*, an argument that a statute precludes arbitration of certain claims is a classic arbitrability argument that delegation provisions reserve for the arbitrator. Courts routinely confront such arguments about a variety of statutes and decline to address them. *See, e.g.*, *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1034 (9th Cir. 2022) (holding that argument that a "statute precludes arbitration" was "exactly the type of threshold arbitrability issue that the parties have delegated to the arbitrator, and the district court was . . . correct not to decide"); *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1293 (11th Cir. 2022) ("[Plaintiff] clearly and unmistakably agreed to delegate . . . the arbitrability dispute in this case—*i.e.*, whether the parties' agreement to arbitrate [plaintiff's] claims is enforceable under the Dodd-

Frank Act."); *Pagano v. NordicTrack, Inc.*, 749 F. Supp. 3d 1183, 1198 (D. Utah 2024) (delegation provision reserved for arbitrator argument that agreement was unenforceable as to certain statutory claims). That makes sense. Such arguments contend that the statute at issue "limit[s] the scope of issues that are subject to arbitration." *Pagano*, 749 F. Supp. 3d at 1198. But "the scope of the matters that are subject to the parties' arbitration agreement" is the quintessential "question[] of arbitrability." *Id.*

*Second*, case law addressing Plaintiff's CWCA theory reinforces that conclusion. For example, in *Cross v. Amazon.com, Inc.*, No. 23-cv-2099, 2024 WL 4346414, at *8 (D. Colo. Sept. 30, 2024), the court applied *Colorado arbitration law* to a different contract—unconnected to Amazon Flex—which, unlike the arbitration agreement here, was not governed by Delaware law as a fallback to the FAA. In so doing, the *Cross* court ruled that "Colorado law prohibit[ed] arbitrating any claims under the [Wage Claim Act]," citing *Lambdin v. District Court*, 903 P.2d 1126, 1130 (Colo. 1995). *Lambdin*, in turn, focused on statutory language that created a nonwaivable right to file a CWCA action in Colorado court. 903 P.2d at 1130; *see also Nieto v. Clark's Market, Inc.*, 488 P.3d 1140, 1142 (Colo. 2021) (explaining that under C.R.S. § 8-4-121, "any term of an agreement that purports to [violate an employee's CWCA rights] is void"). *Lambdin* described this nonwaivable right to file suit as a "procedural right" under the CWCA that overrode the more general language in the Colorado Uniform Arbitration Act. 903 P.2d at 1130-31. Here, in contrast, the parties agreed that the enforceability of the TOS's arbitration provision would be determined under

Delaware law, and the fact that Colorado's arbitration statute yields to the CWCA is not controlling as to whether Delaware law (or the FAA) does the same. That is a conflict-of-laws question that was not present in *Lambdin* or *Cross*. But any challenge Plaintiff wishes to make to the TOS's Delaware choice-of-law provision is reserved for the arbitrator. *See, e.g.*, *Ratajesak v. New Prime, Inc.*, No. 18-cv-9396, 2019 WL 1771659, at *5 (C.D. Cal. Mar. 20, 2019) (enforcing FAA-exempt agreement under Missouri law, without resolving argument that California law overrode the Missouri choice-of-law provision, because of the contract's delegation provision).

*Third*, even if the conflict-of-laws analysis were for this Court, Plaintiff cannot justify disregarding the TOS's Delaware choice-of-law provision. Contractual choice-of-law provisions are ordinarily enforceable unless there is no reasonable basis for the choice or the chosen law would contravene a fundamental policy of a state with a materially greater interest. *See, e.g.*, *Am. Exp. Fin. Advisors, Inc. v. Topel*, 38 F. Supp. 2d 1233, 1239 (D. Colo. 1999). Here, there is a reasonable basis for choosing the law of Delaware, where Amazon "is incorporated." *Kipling v. State Farm Mut. Auto. Ins. Co.*, 159 F. Supp. 3d 1254, 1270 (D. Colo. 2016); *Nedlloyd Lines B.V. v. Superior Ct.*, 834 P.2d 1148, 1153 (Cal. 1992). And no fundamental Colorado policy forbids arbitrating Plaintiff's claims. The possibility that Colorado law might not enforce the arbitration provision here does not rise to the level of a fundamental policy. A mere difference in outcomes "is not a substantial conflict which warrants . . . rejection of a contractually designated choice of law." *Hansen v. GAB Bus. Servs., Inc.*, 876 P.2d

112, 113 (Colo. App. 1994). Moreover, *Lambdin*'s holding turned on the language of the CWCA, "not on the public policy embodied in [that] statute[.]" *Vallagio at Inverness Residential Condo. Ass'n, Inc. v. Metro. Homes, Inc.*, 395 P.3d 788, 796 (Colo. 2017). "[T]here is no general policy against enforcing statutory claims through arbitration." *Byerly v. Kirkpatrick Pettis Smith Polian, Inc.*, 996 P.2d 771, 774 (Colo. App. 2000) (explaining that the FAA's preemption of C.R.S. § 8-4-121's predecessor does not offend public policy); *cf. Integrated Assocs. of Denver, Inc. v. Pope*, No. 21-1019, 2022 WL 2388420, at *8 (10th Cir. July 1, 2022).[2]

*Fourth*, even on its own terms, the CWCA does not guarantee Plaintiff a right to litigate in this Court. She "may file suit in any court having jurisdiction over the parties to pursue all available equitable relief." C.R.S. § 8-4-110(2). But that language "does not guarantee that once [she] files suit, the case will forever remain in the court of plaintiff's choosing." *Bowers v. Tension Int'l, Inc.*, No. 15-cv-2734, 2016 WL 3181312, at *5 (D. Colo. June 8, 2016); *see also Brownlee*, 49 F. Supp. 3d at 882 ("[T]he

[2] Additionally, *Lambdin* was concerned that the contract there required arbitration in *California* and required the plaintiff to arbitrate his *substantive claims* "under California law." *Id.* at 1130. The contract thus "denie[d] Lambdin the right to have the Wage Claim Act . . . govern his compensation dispute" and waived both "procedural *and substantive* rights." *Id.* (emphasis added). Here, on the other hand, the TOS provides for arbitration at a convenient location within 45 miles of where Plaintiff last provided services. TOS § 11(i). And Amazon does not dispute that Plaintiff's *substantive* claims will be determined under Colorado law; only the TOS's enforcement is subject to Delaware law. *See* TOS § 12; *cf. Brownlee v. Lithia Motors, Inc.*, 49 F. Supp. 3d 875, 882 (D. Colo. 2014) (distinguishing between contractually chosen law's effect on the contract and the CWCA's effect on the plaintiff's substantive claims).

Wage Act does not mandate a forum or venue, nor can it demand that a court (as opposed to an arbitrator) hear and decide Wage Act claims.").

*Fifth*, *Cross* and *Lambdin* relied on a now-superseded version of the CWCA, which recognized a broader right to file suit. Before 2025, the statute provided that an aggrieved person "may file suit in any court having jurisdiction over the parties without regard to exhaustion of any administrative remedies." C.R.S. § 8-4-110(2) (2023). But effective August 6, 2025, that right applies only to the pursuit of *equitable relief*: the aggrieved person "may file suit in any court having jurisdiction over the parties to pursue all available *equitable relief*, including equitable relief to deter future violations and prevent unjust enrichment, without regard to exhaustion of any administrative remedies." C.R.S. § 8-4-110(2) (2025). Equitable relief is only one small piece of what Plaintiff seeks here. The complaint also demands "compensatory damages" and "statutory penalties," Compl. 6-7, which are quintessential forms of *legal* relief. *See, e.g.*, *SEC v. Jarkesy*, 603 U.S. 109, 123, 125 (2024) (noting that "money damages" and civil penalties are forms of legal relief). And given the TOS's severability provision, TOS § 16, at a bare minimum, Plaintiff's agreement to arbitrate claims for monetary relief is enforceable, even under the CWCA.

## IV. <u>CONCLUSION</u>

For all these reasons, the Court should compel Plaintiff to arbitrate her dispute on an individual basis in accordance with her agreement and stay this litigation pending arbitration.

Dated: October 20, 2026

MORGAN, LEWIS & BOCKIUS LLP

By: s/ Sari M. Alamuddin

Sari M. Alamuddin
sari.alamuddin@morganlewis.com
Kevin F. Gaffney
kevin.gaffney@morganlewis.com

110 North Wacker Drive
Chicago, IL 60606-1511
Telephone: +1.312.324.1000
Facsimile: +1.312.324.1001

Attorneys for Defendant

**CERTIFICATION OF CONFERRAL**

Counsel for Defendant conferred with counsel for Plaintiff regarding the relief sought in this Motion by email on November 4 and 5, 2025, in which we described our positions generally. We conferred again via a Microsoft Teams videoconference on November 6, in which we discussed our positions in depth and responded to each other's positions. Plaintiff opposes the motion to compel arbitration because Plaintiff's counsel believes the FAA does not apply and that the nonwaiver of rights under the Colorado Wage Claim Act precludes arbitration.

Dated: October 20, 2026

s/ Sari M. Alamuddin
Sari M. Alamuddin
Attorney for Defendant

**CERTIFICATION REGARDING USE OF GENERATIVE AI FOR DRAFTING**

No portion of this filing was drafted by AI.

Dated: October 20, 2026

s/ Sari M. Alamuddin
Sari M. Alamuddin
Attorney for Defendant